### 7809.   PEACOCK et al. v. ANDERSON.

1. The general demurrer bringing into question the jurisdiction of the court over the defendant Peacock, and the various special demurrers to the petition, were properly overruled.

2. The evidence did not demand the conclusion that the stock purchased by the plaintiff was wholly without value at the time the purchase was induced by the alleged misleading and untruthful representations as to the financial condition of the corporation, made by the defendant Peacock, on account of which the plaintiff sued; and therefore the following charge to the jury was error: "If you believe he is entitled to recover, gentlemen, the measure of damages would be the amount he paid for the stock—that is, whatever money he lost." The amount the plaintiff lost would not be identical with that expended by him for the stock, unless such stock was absolutely worthless at the time of the purchase. This instruction likewise amounted to an expression of opinion by the court upon a contested point in the case: whether the loss sustained by the plaintiff was equal to or less than the full amount paid by him for the stock. For the same reasons, the court erred in charging the jury as follows: "If you should allow the plaintiff to recover, you may increase the amount he paid for his stock by a sum equivalent to interest, as stated to you," as this instruction likewise gave as the measure of damages the amount paid by the plaintiff for the stock.

3. There is no substantial merit, under the facts of this case, in the three remaining special grounds of the motion for a new trial.

4. There was some evidence to support all the material allegations in the petition, except that the stock alleged to have been sold to the plaintiff by a conspiracy between the two defendants, and through certain false representations as to its value and as to the solvency of the corporation, was entirely worthless when purchased; and the judgment is reversed solely on account of the error in the charge of the court, referred to in the 2d headnote.

                    DECIDED JULY 23, 1917.

Action for deceit; from city court of Atlanta—Judge Reid. March 11, 1915.

*Little, Powell, Smith & Goldstein, W. M. Clements,* for plaintiffs in error. *Charles H. Griffin, Walter S. Dillon,* contra.

WADE, C. J.   Anderson sued Pollock and Peacock jointly in an action for fraud and deceit, alleging, that the former was a resident of Fulton county, Georgia, and the latter of Dodge county; that on February 3, 1914, and at various times thereafter named in the petition, Pollock was the president and Peacock a vice-president and director of the Union Trust Company, a corporation of Fulton county, Georgia; that Pollock and Peacock entered into a conspiracy to sell or cause to be sold to the plaintiff certain shares

of the capital stock of that company, and, in pursuance of the conspiracy, prepared a false statement pretending to show the financial condition of the corporation, which statement it was agreed between them should be used in effecting the sale of its capital stock to him; that this statement was signed by Peacock, a man in whom he had confidence, and was by the consent and agreement of Pollock and Peacock thereafter exhibited to the plaintiff by a duly authorized agent of the company, who, by means of the false representations therein, effected a sale to him of certain shares of stock belonging individually to the said agent, for $1,320 cash; that the stock was worthless at the time it was purchased by the plaintiff, and both Pollock and Peacock had knowledge of this fact. The plaintiff made various other allegations as to the precise misrepresentations contained in the statement signed by Peacock and given circulation by Pollock, which partly induced him to expend the $1,320, but it is unnecessary for the purposes of this decision to recite them.

The receiver testified as to various discrepancies between the statement of assets and liabilities given currency by the defendants, which was signed by the defendant Peacock, but all his testimony had reference to the financial condition of the corporation at the time he was appointed receiver, April 29, 1914; whereas the statement made by Peacock, which, the plaintiff alleged, induced him to purchase stock in the corporation, was dated December 31, 1913, and was agreed to and signed on February 3, 1914, and the purchase of stock was actually made by the plaintiff on February 13, 1914. The receiver testified as to numerous items and various apparent discrepancies in the statement referred to, which itself bore express reference to the condition of the corporation "at the close of business December 31, 1913;" and it seems probable that at the time his testimony was delivered, in March, 1915, stock in the corporation was utterly worthless. However, his testimony does not compel the conclusion that on December 31, 1913, or February 3, 1914, or February 13, 1914, the corporation was so utterly insolvent that the stock therein purchased by the plaintiff was *then* absolutely worthless. The receiver said: "I have studied the history of the company with regard to the assets, as to tracing the assets that might belong to the company. So far as I know, the corporation and assets on December 31st and until my appointment

[on April 29, 1914] were the same when I was appointed, and that is true also of February [1914], *so far as I know*" [italics ours]. Likewise, on cross-examination: "I say so far as I know there was no change, I merely mean I don't know about it. The stock and bonds, instead of being $49,500 as carried by them in December, were, when I took charge, $87,000. The item of bills receivable, $216,318.38 (as carried in December), was an entirely different figure when I took charge of the concern. I know there existed a panic in business generally between December and when I took charge." Again, in response to the following question: "You are not willing to state that this statement attached to the petition (the statement of December 31st) does not correctly or did not correctly represent the assets and liabilities carried on the books of the company at that time?" he answered: "I do not know. I was not interested in this statement of December 31st. I am not able to state that there was any error in that statement." He further said: "As to this financial statement of December 31st, 1913, I don't know a thing about that statement. None of these assets that are mentioned in this statement of December 31st have been concealed, so far as I know or have been able to learn. The books don't show any transaction where the assets have decreased or been depleted in any way; and I have not heard of any transaction where the assets would be exhausted. There were no losses that would use up the assets during the time, so far as I know." This testimony did not amount to positive testimony that the stock at the time it was purchased by Anderson was wholly worthless, nor does it appear elsewhere in the record that either the plaintiff himself or any other witness definitely and positively testified to this effect. While it might be fairly assumed from the testimony of the receiver that in all probability the stock of the Union Trust Company was altogether worthless when it was sold by the agent, Orr, to the plaintiff, Anderson, that conclusion is not demanded by the testimony; for, notwithstanding the short time which elapsed between December 31, 1913, and April 29, 1914, or the still shorter time between February 13, 1914 (when the plaintiff purchased the stock), and April 29, 1914, it can not be said that even in that brief period the items set forth in the statement of assets and liabilities, upon which the letter of Peacock (which induced the plaintiff to purchase) was predicated,

had not very materially changed. In fact, the receiver himself stated that a period of great financial depression had ensued between December, 1913, and April 29, 1914, and there was other testimony to the same effect, as well as some testimony showing a shrinkage in the value of some of the items included in the statement of assets, on account of the bankruptcy of certain other corporations with which the Union Trust Company had business connections.

It is urged by able counsel for the defendant in error that no issue as to the worthlessness of the stock at the time of the purchase by the plaintiff was raised in any manner by the pleadings or during the trial. It is enough to say, in answer to this contention, that the allegation in the petition that the stock was worthless was denied explicitly in the answers of the defendants; and furthermore the evidence as a whole disclosed that there was an attempt on the part of the defendants to show that the property listed in the statement referred to in the letter of the defendant Peacock was in fact worth as much as there shown, or approximately as much. Certainly the value of the stock at the time of its purchase by the plaintiff was thus put in issue, and it was not conceded in the pleadings or otherwise that the stock was worthless when sold to the plaintiff. This being true, it follows that serious injury may have been done the defendants by the charge instructing the jury that the measure of damages, in the event they should find that the plaintiff was entitled to recover, would be the amount he had expended for the stock; as this in effect was equivalent to an instruction that the stock was utterly worthless when purchased, and very strongly intimated, if it did not in fact say, that in the opinion of the court this was in fact true; though, as suggested above, the worthlessness of the stock was denied by the defendants in their pleas and was disputed by some evidence offered in their behalf. It is also true that, considering certain testimony for the plaintiff and discrediting some evidence for the defendants, it is easily demonstrable that (as urged by counsel for the defendant in error) the testimony as a whole might sustain (under one theory) a finding for even a greater amount than $1,320, as the actual damages suffered by the plaintiff, and therefore that the erroneous instruction as to the measure of damages might not have been harmful to the defendants and would not require a reversal. But,

on the other hand, this interpretation of the evidence is not the only interpretation, nor is it demanded; and since an acceptance by the jury of some of the other testimony in the case would have necessitated a different conclusion and might have led them to believe that the stock had some value from December 31, 1913, up to and including February 13, 1914, the instruction was in fact harmful, for it submitted to the jury as a settled issue one of the vital contentions in the case.

As the case must go back for a new trial, we do not think it proper to comment at length on the evidence, or to refer specifically to any more of it than is necessary to make clear the reason for the ruling reversing the judgment of the lower court.

*Judgment reversed. George and Luke, JJ., concur.*